IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| WILLIAM C. FLOYD, JR., <br><br> Petitioner, <br><br> vs. <br><br> SCOTT FRAKES, Director of the Nebraska Department of Correctional Services; and BRAD HANSEN, Warden Tecumseh State Correctional Institution; <br><br> Respondents. | 8:13CV195 <br><br> MEMORANDUM AND ORDER |

    This matter is before the court on preliminary review of Petitioner William C. Floyd, Jr.'s 58-page Amended Petition for Writ of Habeas Corpus (Filing No. 127) brought pursuant to 28 U.S.C. § 2254. The purpose of this review is to determine whether Petitioner's claims, when liberally construed, are potentially cognizable in federal court. Condensed and summarized for clarity, Petitioner's claims[1] are:

> Claim One: Petitioner was denied effective assistance of counsel *because* trial counsel **(1)** failed to investigate Carrissa Flanagan, Maurice Thomas, and men hired to retaliate against Maurice Davis and his family as possible suspects and failed to introduce that evidence at trial (Filing No. 127 at CM/ECF pp. 17, 18-19, 33, 34-35); **(2)** failed to interview Becky Breyman, Felicia Williams, and Coney Stephens (*Id.* at CM/ECF p. 18); **(3)** failed to subpoena Traeshawn Davis to testify at trial, or alternatively, introduce his prior trial testimony (*Id.* at CM/ECF pp. 20, 33); **(4)** failed to properly

---
    [1] For reference of the parties, the court will cite to the pages of Petitioner's amended habeas petition from which it construed each of Petitioner's claims.

investigate the crime scene and the Omaha Police Department investigation in order to effectively impeach Shantelle Vickers' testimony at trial (*Id.* at CM/ECF pp. 20-21, 36); **(5)** failed to interview Steven Lindsay and subpoena him to testify at trial (*Id.* at CM/ECF pp. 22, 33); **(6)** failed to investigate Pierce Armstead and subpoena him to testify at trial (*Id.* at CM/ECF pp. 22-23); **(7)** failed to investigate Petitioner's "unusual gait" and eyesight (*Id.* at CM/ECF p. 24); **(8)** failed to order any ballistic examination or evaluation of the trajectory and residue soot of the bullet removed from the windowsill (*Id.* at CM/ECF p. 26); **(9)** failed to subpoena Shantelle Vickers' telephone records from October 7 and 8, 2003 (*Id.*); **(10)** failed to interview Howard Banister (*Id.* at CM/ECF p. 27); **(11)** failed to adequately investigate the prior bad act that occurred on April 24, 2003 (*Id.*); **(12)** failed to present truthful evidence at the pretrial hearing and at trial about the April 24, 2003, prior bad act (*Id.* at CM/ECF p. 28); **(13)** failed to challenge in a motion to suppress the validity of Shantelle Vickers' affidavit as probable cause for the arrest warrant (*Id.*); **(14)** failed to conduct proper voir dire when counsel failed to remove certain jurors for cause or with peremptory strikes and used peremptory strikes in a gender-biased manner (*Id.* at CM/ECF pp. 29-31); **(15)** failed to move for a mistrial or request a curative instruction after a juror discussed his opinion of Petitioner's guilt in front of the other jurors during voir dire (*Id.* at CM/ECF p. 30); **(16)** failed to object when the prosecutor used peremptory strikes in a gender-biased manner (*Id.* at CM/ECF p. 31); **(17)** prohibited Petitioner from testifying (*Id.* at CM/ECF pp. 27, 32); **(18)** failed to subpoena Shantelle Vickers' medical records to impeach her testimony at trial about Petitioner's acts of domestic violence against her

(*Id*. at CM/ECF p. 35); **(19)** failed to investigate Shantelle Vickers' abuse of Petitioner (*Id*. at CM/ECF pp. 35-36); **(20)** failed to subpoena Officer Allen Wagner to testify at trial (*Id*. at CM/ECF p. 36); **(21)** failed to effectively cross-examine Ruth Buie about Petitioner's clothing, the exact times he was with her that day, his "unusual gait," and his glasses (*Id*. at CM/ECF p. 37); **(22)** failed to effectively cross-examine Shawn Smith about Petitioner's "unusual gait" and glasses (*Id*.); **(23)** failed to cross-examine Petitioner's mother about his "unusual gait" (*Id*. at CM/ECF p. 38); **(24)** failed to cross-examine Shantelle Vickers and Andre Jack about whether the suspect moved in a unique way or wore glasses (*Id*.); **(25)** failed to investigate the location of the missing video and audiotape of Shantelle Vickers' first statement to law enforcement (*Id*. at CM/ECF p. 39); **(26)** failed to assert a *Brady* violation with regard to the missing video and audiotape (*Id*.); **(27)** failed to adduce at trial the discrepancies between the truth and Shantelle Vickers' first statement to law enforcement (*Id*.); **(28)** failed to investigate the location of the photo array that law enforcement displayed to Andre Jack (*Id*. at CM/ECF p. 40); **(29)** failed to assert a *Brady* violation with regard to the photo array (*Id*.); **(30)** failed to object to Exhibits 145 and 146 and testimony about them (*Id*. at CM/ECF p. 44); **(31)** failed to impeach Detective Christopher Perna's testimony at trial with evidence that Petitioner escaped from him during the April 24, 2003, prior bad act (*Id*. at CM/ECF p. 45); **(32)** failed to exclude or remedy Shantelle Vickers' testimony that she and Petitioner had hundreds of fights (*Id*.); **(33)** failed to object to erroneous jury instructions (*Id*. at CM/ECF pp. 45-46); **(34)** failed to object to prosecutorial misconduct during closing arguments and the direct examination of Shantelle Vickers

|                | (*Id*. at CM/ECF pp. 46-48); and **(35)** made an improper opening statement "basically telling the jury that all the evidence against [Petitioner] was true." (*Id*.) |
|---|---|
| Claim Two:     | Petitioner was denied effective assistance of counsel *because* counsel failed to raise on direct appeal **(1)** prosecutorial misconduct because the State withheld from Petitioner the police report about the video and audiotape of Shantelle Vickers' first statement to law enforcement and the photo array that law enforcement displayed to Andre Jack; **(2)** sufficiency of the evidence for Petitioner's convictions of first degree murder and manslaughter of an unborn child[2]; **(3)** prosecutorial misconduct because the State introduced the 911 tape into evidence at trial; **(4)** prosecutorial misconduct because the State presented false and misleading evidence to the jury; **(5)** judicial misconduct because the trial court overruled trial counsel's motion to remove a juror for cause who formed a preconceived opinion about Petitioner's guilt; **(6)** judicial misconduct because the trial court erroneously instructed the jury; **(7)** insufficient notice of the nature and cause of the accusation during Petitioner's arraignment on the second amended information; **(8)** the unconstitutionality of Petitioner's conviction and sentence for Count III, felon in possession of a firearm; **(9)** judicial misconduct for imposing a sentence on Count III when the State failed to offer documentary evidence that the underlying offense was a felony; **(10)** prosecutorial misconduct because law enforcement lacked probable cause to arrest Petitioner; and **(11)** judicial misconduct because the trial court judge refused to recuse |

---

[2] This claim includes Petitioner's claims that counsel failed to raise (1) that the State failed to prove that the manner of death was homicide, and (2) judicial misconduct because the trial court accepted the jury's guilty verdict.

4

|               | himself "and denied counsel during hearing to litigate." (*Id*. at CM/ECF pp. 49-50.) |
|---|---|
| Claim Three:  | Petitioner was denied the constitutional right to a fair trial *because* **(1)** the prosecutor and trial counsel used peremptory strikes in a gender-biased manner (*Id*. at CM/ECF pp. 31-32); **(2)** the State committed prosecutorial misconduct when it withheld from Petitioner the video and audiotape of Shantelle Vickers' first statement to law enforcement and the photo array that law enforcement displayed to Andre Jack in violation of *Brady* (*Id*. at CM/ECF pp. 39-40); **(3)** Detective Christopher Perna committed misconduct when he coached Shantelle Vickers during her second statement to law enforcement and altered the crime scene diagram to match Vickers' "new" version of events (*Id*. at CM/ECF pp. 23, 25, 40-44); **(4)** the State committed prosecutorial misconduct when it permitted evidence of the altered crime scene at trial (*Id*. at CM/ECF p. 44); **(5)** the trial court erroneously instructed the jury (*Id*. at CM/ECF pp. 45-46); and **(6)** the State committed prosecutorial misconduct during closing arguments and direct examination of Shantelle Vickers. (*Id*. at CM/ECF 46-48.) |
| Claim Four:   | Petitioner was denied effective assistance of counsel *because* trial and appellate counsel failed to maintain sufficient client contact with Petitioner to enable Petitioner "to obtain or pursue significant avenues which would have led to exculpatory information" and "to allow for [Petitioner] to make decisions which would affect his opportunity to preserve claims." (*Id*. at CM/ECF pp. 51-54.) |
| Claim Five:   | The state district court and the Nebraska Supreme Court denied Petitioner the right to a full and fair opportunity to investigate and present his claims in |

|  | his postconviction proceedings. (*Id.* at CM/ECF pp. 32, 39-40, 54-56.) |
|---|---|
| Claim Six: | Each of Petitioner's aforementioned claims and their subparts constitute a violation of his rights to Due Process, Equal Protection, and fair process under the Fourteenth Amendment. (*Id.* at CM/ECF p. 55.) |

**With the exception of Claim Five** (and Claim Six as it pertains to Claim Five), the court determines that Petitioner's claims, when liberally construed, are potentially cognizable in federal court. However, the court cautions Petitioner that no determination has been made regarding the merits of these claims or any defenses to them or whether there are procedural bars that will prevent Petitioner from obtaining the relief sought. Claim Five is not a cognizable habeas corpus claim because it is based on errors in the state postconviction proceedings. Errors during state postconviction review are not cognizable in a federal habeas corpus action. *See Jenkins v. Houston*, 4:05CV3099, 2006 WL 126632 (D. Neb. 2006) (collecting cases). **Claim Five is dismissed. However, Respondents should be mindful of and, if necessary, respond to Petitioner's allegations in his amended habeas petition that he is "excused from any exhaustion requirements that may otherwise have impeded this action" because he was denied the right to a full and fair opportunity to investigate and present his claims in his postconviction proceedings.** (*See* Filing No. 127 at CM/ECF pp. 8-16, 54-55.)

IT IS THEREFORE ORDERED that:

1. Upon initial review of the amended habeas corpus petition (Filing No. 127), the court preliminarily determines that Petitioner's claims, as they are set forth in this Memorandum and Order, are potentially cognizable in federal court with the exception of Claim Five. **Claim Five is dismissed.**

2. By **October 23, 2017**, Respondents must file a motion for summary judgment or answer. The clerk of the court is directed to set a pro se case management deadline in this case using the following text: **October 23, 2017**: deadline for Respondents to file motion for summary judgment or answer and separate brief.

3. The court understands that Respondents have filed all state court records in this matter. (*See* [Filing Nos. 9](#)-[13](#), [31](#), [109](#).) In the event that Respondents' designation of state court records is deemed insufficient by Petitioner, Petitioner may file a motion with the court requesting additional documents. Such motion must set forth the documents requested and the reasons the documents are relevant to the cognizable claims. **The clerk of the court is directed to send** [Filing No. 109](#) **("Amended Designation of State Court Records in Support of Amended Answer") to Petitioner without the attachments.**

4. If Respondents elect to file a motion for summary judgment, the following procedures must be followed by Respondents and Petitioner:

    A. The motion for summary judgment must be accompanied by a separate brief, submitted at the time the motion is filed.

    B. Copies of the motion for summary judgment and Respondents' brief must be served on Petitioner *except* that Respondents are only required to provide Petitioner with a copy of the specific pages of the record that are cited in Respondents' brief.

    C. No later than 30 days following the filing of the motion for summary judgment, Petitioner must file and serve a brief in opposition to the motion for summary judgment. Petitioner may not submit other documents unless directed to do so by the court.

D. No later than 30 days after Petitioner's brief is filed, Respondents must file and serve a reply brief. In the event that Respondents elect not to file a reply brief, they should inform the court by filing a notice stating that they will not file a reply brief and that the motion is therefore fully submitted for decision.

E. If the motion for summary judgment is denied, Respondents must file an answer and a brief that complies with terms of this order. (*See* the following paragraph.) The documents must be filed no later than 30 days after the denial of the motion for summary judgment. **Respondents are warned that failure to file an answer and a brief in a timely fashion may result in the imposition of sanctions, including Petitioner's release.**

4. If Respondents elect to file an answer, the following procedures must be followed by Respondents and Petitioner:

A. By **October 23, 2017**, Respondents must file an answer. The answer must be accompanied by a separate brief, submitted at the time the answer is filed. Both the answer and the brief must address all matters germane to the case including, but not limited to, the merits of Petitioner's allegations that have survived initial review, and whether any claim is barred by a failure to exhaust state remedies, a procedural bar, non-retroactivity, a statute of limitations, or because the petition is an unauthorized second or successive petition. *See, e.g.*, Rules 5(b) and 9 of the *Rules Governing Section 2254 Cases in the United States District Courts*.

B. Copies of the answer and Respondents' brief must be served on Petitioner at the time they are filed with the court *except* that Respondents are only required to provide Petitioner with a copy of the specific pages of the designated record that are cited in Respondents' brief.

C. No later than 30 days after Respondents' brief is filed, Petitioner must file and serve a brief in response. Petitioner must not submit any other documents unless directed to do so by the court.

D. No later than 30 days after Petitioner's brief is filed, Respondents must file and serve a reply brief. In the event that Respondents elect not to file a reply brief, they should inform the court by filing a notice stating that they will not file a reply brief and that the merits of the petition are therefore fully submitted for decision.

5. No discovery shall be undertaken without leave of the court. *See* Rule 6 of the *Rules Governing Section 2254 Cases in the United States District Courts*.

Dated this 7th day of August, 2017.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge