IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| WILLIAM C. FLOYD JR., <br><br> Petitioner, <br><br> vs. <br><br> SCOTT FRAKES, Director of the Nebraska Department of Correctional Services; and BRAD HANSEN, Warden Tecumseh State Correctional Institution; <br><br> Respondents. | 8:13CV195 <br><br> **MEMORANDUM AND ORDER** |

This matter comes before the court on Petitioner's Objection Motion. ([Filing No. 135](#)). Petitioner objects to the court's Memorandum and Order dated October 16, 2017, ([Filing No. 132](#)) which granted, at least in part, Petitioner's motion to amend his habeas corpus petition to add a claim of actual innocence ("Motion to Amend") ([Filing No. 131](#)). Petitioner now asks the court to allow his additional claims of ineffective assistance of trial and appellate counsel stated in his Motion to Amend.

The court had initially read Petitioner's Motion to Amend as only seeking to add a claim of actual innocence and that the allegations within the motion were offered in support of that claim. Upon further review of Petitioner's Motion to Amend ([Filing No. 131](#)), however, the court determines that Petitioner alleged four claims of ineffective assistance of trial counsel and one claim of ineffective assistance of appellate counsel that he had not previously raised. Specifically, Petitioner alleges trial counsel was ineffective for failing to (1) stay the proceedings with respect to Count III, felon in possession of a firearm, for review in the federal courts; (2) object to prejudicial testimony from Shantelle Vickers regarding two threatening phone calls from Petitioner; (3) call Carolyn Floyd as a

character witness; and (4) sequester jurors. (*Id*. at CM/ECF p.10.) Petitioner also alleges appellate counsel was ineffective for failing to raise on direct appeal that certain state witnesses were paid to testify against Petitioner. (*Id*. at CM/ECF p.15.)

Because the court granted Petitioner's Motion to Amend, the court will err on the side of caution and will grant Petitioner's Objection Motion to include the claims of ineffective assistance of trial and appellate counsel identified above. For ease of reference, the court will restate all of Petitioner's claims here, incorporating the court's previous orders setting forth Petitioner's claims. (*See* Filing Nos. 128, 130, and 132.) Condensed and summarized for clarity, Petitioner's claims[1] are:

> Claim One: Petitioner was denied effective assistance of counsel *because* trial counsel **(1)** failed to investigate Carrissa Flanagan, Maurice Thomas, and men hired to retaliate against Maurice Davis and his family as possible suspects and failed to introduce that evidence at trial (Filing No. 127 at CM/ECF pp.17, 18-19, 33, 34-35); **(2)** failed to interview Becky Breyman, Felicia Williams, and Coney Stephens (*Id*. at CM/ECF p.18); **(3)** failed to subpoena Traeshawn Davis to testify at trial, or alternatively, introduce his prior trial testimony (*Id*. at CM/ECF pp.20, 33); **(4)** failed to properly investigate the crime scene and the Omaha Police Department investigation in order to effectively impeach Shantelle Vickers' testimony at trial (*Id*. at CM/ECF pp.20-21, 36); **(5)** failed to interview Steven Lindsay and subpoena him to testify at trial (*Id*. at CM/ECF pp.22, 33); **(6)** failed to investigate Pierce Armstead and subpoena him to testify at trial (*Id*. at CM/ECF pp.22-23); **(7)** failed to investigate Petitioner's "unusual gait" and eyesight

---

[1] For reference of the parties, the court will cite to the pages of Petitioner's amended habeas petition (Filing No. 127) and Motion to Amend (Filing No. 131) from which it construed each of Petitioner's claims.

2

(*Id*. at CM/ECF p.24); **(8)** failed to order any ballistic examination or evaluation of the trajectory and residue soot of the bullet removed from the windowsill (*Id*. at CM/ECF p.26); **(9)** failed to subpoena Shantelle Vickers' telephone records from October 7 and 8, 2003 (*Id*.); **(10)** failed to interview Howard Banister (*Id*. at CM/ECF p.27); **(11)** failed to adequately investigate the prior bad act that occurred on April 24, 2003 (*Id*.); **(12)** failed to present truthful evidence at the pretrial hearing and at trial about the April 24, 2003, prior bad act (*Id*. at CM/ECF p.28); **(13)** failed to challenge in a motion to suppress the validity of Shantelle Vickers' affidavit as probable cause for the arrest warrant (*Id*.); **(14)** failed to conduct proper voir dire when counsel failed to remove certain jurors for cause or with peremptory strikes and used peremptory strikes in a gender-biased manner (*Id*. at CM/ECF pp.29-31); **(15)** failed to move for a mistrial or request a curative instruction after a juror discussed his opinion of Petitioner's guilt in front of the other jurors during voir dire (*Id*. at CM/ECF p.30); **(16)** failed to object when the prosecutor used peremptory strikes in a gender-biased manner (*Id*. at CM/ECF p.31); **(17)** prohibited Petitioner from testifying (*Id*. at CM/ECF pp.27, 32); **(18)** failed to subpoena Shantelle Vickers' medical records to impeach her testimony at trial about Petitioner's acts of domestic violence against her (*Id*. at CM/ECF p.35); **(19)** failed to investigate Shantelle Vickers' abuse of Petitioner (*Id*. at CM/ECF pp.35-36); **(20)** failed to subpoena Officer Allen Wagner to testify at trial (*Id*. at CM/ECF p.36); **(21)** failed to effectively cross-examine Ruth Buie about Petitioner's clothing, the exact times he was with her that day, his "unusual gait," and his glasses (*Id*. at CM/ECF p.37); **(22)** failed to effectively cross-examine Shawn Smith about Petitioner's "unusual

gait" and glasses (*Id*.); **(23)** failed to cross-examine Petitioner's mother about his "unusual gait" (*Id*. at CM/ECF p.38); **(24)** failed to cross-examine Shantelle Vickers and Andre Jack about whether the suspect moved in a unique way or wore glasses (*Id*.); **(25)** failed to investigate the location of the missing video and audiotape of Shantelle Vickers' first statement to law enforcement (*Id*. at CM/ECF p.39); **(26)** failed to assert a *Brady* violation with regard to the missing video and audiotape (*Id*.); **(27)** failed to adduce at trial the discrepancies between the truth and Shantelle Vickers' first statement to law enforcement (*Id*.); **(28)** failed to investigate the location of the photo array that law enforcement displayed to Andre Jack (*Id*. at CM/ECF p.40); **(29)** failed to assert a *Brady* violation with regard to the photo array (*Id*.); **(30)** failed to object to Exhibits 145 and 146 and testimony about them (*Id*. at CM/ECF p.44); **(31)** failed to impeach Detective Christopher Perna's testimony at trial with evidence that Petitioner escaped from him during the April 24, 2003, prior bad act (*Id*. at CM/ECF p.45); **(32)** failed to exclude or remedy Shantelle Vickers' testimony that she and Petitioner had hundreds of fights (*Id*.); **(33)** failed to object to erroneous jury instructions (*Id*. at CM/ECF pp.45-46); **(34)** failed to object to prosecutorial misconduct during closing arguments and the direct examination of Shantelle Vickers (*Id*. at CM/ECF pp.46-48); **(35)** made an improper opening statement "basically telling the jury that all the evidence against [Petitioner] was true" (*Id*.); **(36)** failed to stay the proceedings with respect to Count III, felon in possession of a firearm, for review in the federal courts (Filing No. 131 at CM/ECF p.10.) ; **(37)** failed to object to prejudicial testimony from Shantelle Vickers regarding two threatening phone calls from Petitioner (*Id*.); **(38)**

|   | failed to call Carolyn Floyd as a character witness (*Id*.); and **(39)** failed to sequester jurors (*Id*.). |
|---|---|
| Claim Two: | Petitioner was denied effective assistance of counsel *because* counsel failed to raise on direct appeal **(1)** prosecutorial misconduct because the State withheld from Petitioner the police report about the video and audiotape of Shantelle Vickers' first statement to law enforcement and the photo array that law enforcement displayed to Andre Jack; **(2)** sufficiency of the evidence for Petitioner's convictions of first degree murder and manslaughter of an unborn child[2]; **(3)** prosecutorial misconduct because the State introduced the 911 tape into evidence at trial; **(4)** prosecutorial misconduct because the State presented false and misleading evidence to the jury; **(5)** judicial misconduct because the trial court overruled trial counsel's motion to remove a juror for cause who formed a preconceived opinion about Petitioner's guilt; **(6)** judicial misconduct because the trial court erroneously instructed the jury; **(7)** insufficient notice of the nature and cause of the accusation during Petitioner's arraignment on the second amended information; **(8)** the unconstitutionality of Petitioner's conviction and sentence for Count III, felon in possession of a firearm; **(9)** judicial misconduct for imposing a sentence on Count III when the State failed to offer documentary evidence that the underlying offense was a felony; **(10)** prosecutorial misconduct because law enforcement lacked probable cause to arrest Petitioner; and **(11)** judicial misconduct because the trial court judge refused to recuse himself "and denied counsel during hearing to litigate;" **(12)** Petitioner's assigned errors on both |

---

[2] This claim includes Petitioner's claims that counsel failed to raise (1) that the State failed to prove that the manner of death was homicide, and (2) judicial misconduct because the trial court accepted the jury's guilty verdict.

|   | direct appeals as federal constitutional claims ([Filing No. 127 at CM/ECF pp.49-50](#)); **(13)** payment of certain state witnesses to testify against Petitioner ([Filing No. 131 at CM/ECF p.15](#)). |
|---|---|
| Claim Three: | Petitioner was denied the constitutional right to a fair trial *because* **(1)** the prosecutor and trial counsel used peremptory strikes in a gender-biased manner ([Filing No. 127 at CM/ECF pp.31-32](#)); **(2)** the State committed prosecutorial misconduct when it withheld from Petitioner the video and audiotape of Shantelle Vickers' first statement to law enforcement and the photo array that law enforcement displayed to Andre Jack in violation of *Brady* ([*Id*. at CM/ECF pp.39-40](#)); **(3)** Detective Christopher Perna committed misconduct when he coached Shantelle Vickers during her second statement to law enforcement and altered the crime scene diagram to match Vickers' "new" version of events ([*Id*. at CM/ECF pp.23](#), [25](#), [40-44](#)); **(4)** the State committed prosecutorial misconduct when it permitted evidence of the altered crime scene at trial ([*Id*. at CM/ECF p.44](#)); **(5)** the trial court erroneously instructed the jury ([*Id*. at CM/ECF pp.45-46](#)); and **(6)** the State committed prosecutorial misconduct during closing arguments and direct examination of Shantelle Vickers ([*Id*. at CM/ECF pp.46-48](#)). |
| Claim Four: | Petitioner was denied effective assistance of counsel *because* trial and appellate counsel failed to maintain sufficient client contact with Petitioner to enable Petitioner "to obtain or pursue significant avenues which would have led to exculpatory information" and "to allow for [Petitioner] to make decisions which would affect his opportunity to preserve claims." ([*Id*. at CM/ECF pp.51-54](#).) |

| | |
|---|---|
| Claim Five: | The state district court and the Nebraska Supreme Court denied Petitioner the right to a full and fair opportunity to investigate and present his claims in his postconviction proceedings. (*Id*. at CM/ECF pp.32, 39-40, 54-56.) |
| Claim Six: | Each of Petitioner's aforementioned claims and their subparts constitute a violation of his rights to Due Process, Equal Protection, and fair process under the Fourteenth Amendment. (*Id*. at CM/ECF p.55.) |
| Claim Seven: | Petitioner has presented a claim of Actual Innocence as a gateway through any type of procedural default. (Filing No. 131 at CM/ECF p. 15.) |

As previously stated, Petitioner's claims, **with the exception of Claim Five** (and Claim Six as it pertains to Claim Five), are potentially cognizable in federal court. **Claim Five remains dismissed**. (*See* Filing No. 128 at CM/ECF p.6.) In light of the court's ruling, the deadline for Respondents to file their answer and initial brief is extended to 30 days from the date of this order.

The court stresses to Petitioner that the court's decision to allow the additional claims raised in Petitioner's previous Motion to Amend (Filing No. 131) should not be viewed as an invitation to seek further amendments. This matter has been pending for over four years, Petitioner previously had the assistance of appointed counsel, and the court ordered Petitioner to include all claims for relief in a single amended petition (Filing No. 122). As such, the court will not entertain any further amendments absent exceptional circumstances.

IT IS THEREFORE ORDERED that:

1. Petitioner's Objection Motion (Filing No. 135) is granted. Petitioner's claims are amended to include Claim One, subparts (36) through (39)

and Claim Two, subpart (13) as set forth in this Memorandum and Order. Respondents shall respond to Petitioner's claims as set forth in this Memorandum and Order.

2. Respondents shall have until December 11, 2017, to file their answer and initial brief. The clerk's office is directed to set the following case management deadline: **December 11, 2017**: check for Respondents' answer and initial brief.

Dated this 9th day of November, 2017.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge